UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA SMITH,

       Plaintiff,

v.

MICHIGAN BELL TELEPHONE CO.,

       Defendant.
_____/

Case No. 23-cv-11409

HON. MARK A. GOLDSMITH

**OPINION & ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Dkt. 34)**

Following her voluntary resignation, Plaintiff Maria Smith filed this lawsuit against her former employer, Defendant Michigan Bell, alleging discrimination on the basis of disability, failure to accommodate, and interference and retaliation in violation of both the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12101, et seq., and the Michigan Persons With Disabilities Act (PWDCRA) Mich. Comp. Laws § 37.1201, et seq. Amend. Compl. (Dkt. 5). Smith further alleges gender discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA) Mich. Comp. Laws § 37.2101 et seq..[1] Id.

Before the Court is Michigan Bell's motion for summary judgment (Dkt. 34). For the reasons that follow, the Court grants Michigan Bell's motion with respect to Smith's ADA claims and dismisses without prejudice Smith's claims under the PWDCRA and ELCRA.[2]

---

[1] Smith voluntarily agreed to dismiss a prior claim alleging racial discrimination in violation of the ELCRA. Resp. at PageID.872 (Dkt. 35).

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

I.     BACKGROUND

Smith began her employment with Michigan Bell in 2008, working in the company's Kalamazoo, Michigan office. Smith Dep. Tr. at PageID.541 (Dkt. 34-2). Throughout her employment, Smith was a member of the Communication Workers of America Union (CWA). Id. at PageID.549. As a member of CWA, Smith was entitled to progressive discipline pursuant to the collective bargaining agreement. Id. at PageID.542, 549–550; Peck Decl. at ¶ 10, PageID.630 (Dkt. 34-3).

The events giving rise to Smith's claims began in 2019, when she worked in the digital and retail care business as a sales consultant. Smith Dep. Tr. at PageID.542. During the relevant timeframe, Smith reported to sales coach, Tanya Formosa, and Formosa reported to center sales manager, Teresa Martin. Smith Dep. Tr. at PageID.545–546; Peck Decl. at ¶ 7, PageID.629.

In 2019, Michigan Bell's Kalamazoo office closed, and Smith accepted an offer to relocate to the company's Southfield office. Id. That same year, Smith utilized 297 hours of Family and Medical Leave Act time off work. Smith Dep. Tr. at PageID.558; Peck Decl. at ¶ 12, PageID.630, Ex. B to Peck Decl., 2019 Attendance Rep. at PageID.639 (Dkt. 34-3). On March 16, 2020, Smith began a leave of absence related to the start of the COVID-19 pandemic and her children's school closures. Smith Dep. Tr. at PageID.557–558; Peck Decl. at ¶13, PageID.630; Ex. C. to Peck Decl., 2020 Attendance Rep., PageID.646 (Dkt. 34-3).

In May 2021, Smith submitted an ADA accommodation request to work from home for the duration of her pregnancy. Ex. A-1 to Pratt Decl., PageID.726 (Dkt. 34-4). Smith's healthcare provider recommended "limiting commuting/ travel" to less than four hours per day "due to pregnancy to decrease risk of blood clots," and recommended that Smith work remotely "to decrease risk of exposure to COVID 19." Id. at PageID.729–730. Her provider explained that "[by] being pregnant[,] she is more at risk and considered immune compromised for infections

2

including COVID 19," and that she should limit traveling long distances to work "unless deemed necessary" because "all pregnant patients are at risk for blood clots." Id. at PageID.734. On July 15, 2021, Michigan Bell granted Smith's request to work from home through August 25, 2021. Id. at PageID.738.

Smith's claims focus primarily around her 2021 work from home accommodation. First, Smith reports experiencing significant difficulties receiving the necessary equipment to work from home. According to Smith, Michigan Bell "refused" to ship her the functional work from home equipment, and she was eventually compelled to come into the Kalamazoo office to pick it up. Smith Dep. Tr. at PageID.584–585. Smith also reported not having all the required cords and that she experienced difficulty getting her login information to work. Id. at PageID.584. Smith received the cords via mail but could not recall how long she was unable to work due to equipment-related issues. Id. at PageID.587.

Second, Smith reports being disciplined for absences during her approved work from home accommodation. On June 29, 2021, while she was in the office to retrieve equipment to work from home, Smith had a meeting with her union representative and Southfield attendance manager, Shanna Dearden. Dearden Dep. Tr. at PageID.764 (Dkt. 34-8). In the meeting, Smith was issued an "attendance counseling," the first step in Michigan Bell's progressive discipline process, due to alleged absences from August 12 through December 31, 2020 and May 25 through June 23, 2021. Id.; Ex. F to Peck Decl., 6/29/21 Counseling, PageID.667 (Dkt. 34-3). Smith alleges that she was improperly "written up" for absences from May 25, 2021 to June 23, 2021 because she "had been approved for remote accommodation" on those dates. Resp. at PageID.858. Michigan Bell asserts that Smith was not disciplined for working remotely during her accommodation period, but rather for not working at all. Reply Br. at PageID.908; 6/29/21 Counseling at PageID.667.

3

Jason Peck, a senior field attendance administrator at Michigan Bell, reports that Smith did not receive any other attendance discipline prior to her 2023 resignation; Smith "does not recall" whether she received any additional attendance discipline. Peck Decl. at PageID.631; Smith Dep. Tr. at PageID.570–571.

Smith delivered her child on September 1, 2021. Id. at PageID.571. While the parties dispute Smith's exact pattern of attendance in 2021 and 2022, Resp. at PageID.860–861, Michigan Bell's attendance records show that Smith did not work for the remainder of 2021, she worked only one day in 2022, and returned to work on January 16, 2023. Smith Dep. Tr. at PageID.572; Ex. G to Peck Decl., 2022 Attendance Rep., PageID.670–672; Ex. I to Peck Decl., 1/23/23 AT&T MyCoach R., PageID.677 (Dkt. 34-3). On January 23, 2023, Smith had a conversation (but not a formal discipline) about unexcused absences in December 2022 and one on January 17, 2023. Peck Decl. at PageID.632.

On April 11, 2023, Smith voluntarily resigned from her position at Michigan Bell. Smith Dep. Tr. at PageID.589; Smith Resignation, PageID.744 (Dkt. 34-6). Three months prior to her resignation, Smith accepted a new job with the City of Kalamazoo.[3] Smith Dep. Tr. at PageID.590; Offer Ltr. at PageID.746 (Dkt. 34-7).

Smith brought this action, alleging discrimination and retaliation under the ADA, (Counts I and III) and under the PWDCRA (Counts II and IV).[4] She further alleges gender discrimination

---

[3] Smith filed her charge with the Equal Employment Opportunity Commission (EEOC) and was issued a Right to Sue letter on March 15, 2023. Amend. Compl. at PageID.30.

[4] While not raising a freestanding claim in her amended complaint, Smith further alleges that Michigan Bell failed to accommodate the restrictions associated with her pregnancy. Amend. Compl. at PageID.29.

4

under the ELCRA (Count V). Amend. Compl. at PageID.30–39.  Michigan Bell now moves for summary judgment on all counts.  Mot. at PageID.495–496.

## II.     ANALYSIS[5]

The Court begins by addressing Smith's claims arising under the ADA and then briefly considers Smith's claims under ELCRA and PWDCRA.

### A. Smith's ADA Discrimination Claim

Section 12112(a) of the ADA makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (i) she is disabled, (ii) she is otherwise qualified for the position, with or without reasonable accommodation, (iii) she suffered an adverse employment decision, (iv) the employer knew or had reason to know of the plaintiff's disability, and (v) the position remained open while the employer sought other applicants or the disabled individual was replaced. Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 321 (6th Cir. 2019) (citing Ferrari v. Ford Motor Co., 826 F.3d 885, 891–892, 894 (6th Cir. 2016)).

Once the plaintiff has established a prima facie case of disability discrimination, "the burden shifts to [the defendant] to articulate some legitimate, nondiscriminatory reason for its

---

[5] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). If a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the Court will grant the motion. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by presenting evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

actions." Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008).  If the defendant articulates such a reason, the plaintiff "must show by a preponderance of the evidence that the proffered explanation is pretext for discrimination."  Id.

The Court concludes that Smith has failed to establish a prima facie case of disability discrimination because she has not offered sufficient evidence for a reasonable juror to conclude that she was disabled or that she suffered an adverse employment action.  Because Smith has not established a prima facie case, there is no need to engage in the burden-shifting analysis.

    **i.  Disability Status**

The parties disagree whether Smith qualifies as disabled under the ADA.  The ADA defines a disability as a person with "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment;" or (C) a person who is "regarded as having such an impairment." 42 U.S.C. § 1210(A)-(C).

The parties agree that, "pregnancy, by itself, does not constitute a disability." Spees v. James Marine, Inc., 617 F.3d 380, 396 (6th Cir. 2010); see also EEOC Compliance Manual at § 902.2(c)(3), 2009 WL 4782107 (Nov. 21, 2009) ("Because pregnancy is not the result of a physiological disorder, it is not an impairment.").  They differ in their assessment of whether the restrictions highlighted by Smith's health care provider (namely, being at a higher risk for blood clots during long travel and being more susceptible to infections such as COVID-19) represent physical impairments that can render Smith disabled within the meaning of the ADA.

In assessing whether pregnancy-related impairments constitute a disability, courts have emphasized that "[p]regnancy-related conditions have typically been found to be impairments where they are not part of a 'normal' pregnancy." Bunnell v. William Beaumont Hosp., No. 22-12414, 2024 WL 2235160 (E.D. Mich. Apr. 8, 2024) (quoting Spees, 617 F.3d 380, 397) (emphasis added).

For example, in Bunnell, the plaintiff's morning sickness did not constitute a disability because it was a "temporary, normal part of pregnancy." Id. at *9. In addition to differentiating between normal and abnormal pregnancy complications, the court emphasized that "[i]n the few cases that have held that pregnancy-related complications constitute a disability, the plaintiffs' symptoms were significantly more serious." Id. (quoting Gorman v. Wells Mfg. Corp., 209 F. Supp. 2d 970, 976 (S.D. Iowa, July 15, 2002)); see also Szabla v. St. John Hosp. & Med. Ctr., No. 13042, 2011 WL 3714068 (E.D. Mich. Aug 24, 2011) (holding that pregnancy where there was "prior miscarriage; bleeding and lower abdomen groin pain that developed during her second successful pregnancy" was a disability). Thus, pregnancy conditions that are neither abnormal nor severe do not qualify as impairments that can render a plaintiff disabled under the ADA.

Smith's restrictions do not qualify as impairments that can cause a disability because they were not caused by abnormal pregnancy complications, nor were they uniquely severe. Instead, the language in the note provided by Smith's healthcare provider directly implies that the requested accommodations are a standard part of pregnancy. See Ex. A to Resp. at PageID.880 (Dkt. 35-1) ("With being pregnant she is more at risk and considered immune compromised for infections . . . all pregnant patients are at risk for blood clots . . ."). While a desire to limit risk factors in the normal course of pregnancy may warrant accommodations, these considerations do not constitute an abnormal pregnancy. Similarly, an elevated statistical risk of blood clots or infection does not rise to the level of a "substantial complication" associated with pregnancy that courts have held to constitute a disability. Spees, 617 F.3d 380, 397.

Smith emphasizes that the temporary nature of her limitations does not preclude her from being rendered disabled under the ADA. See Resp. at PageID.866 (Dkt. 35) ("[S]hort term pregnancy-related conditions that result in the need for an accommodation constitute a

7

disability."). To support this argument, she refers to EEOC guidelines which emphasize that "a number of pregnancy-related impairments that impose work-related restrictions will be substantially limiting, even though they are only temporary." Enforcement Guidance on Pregnancy Discrimination and Related Issues, EEOC, 6/25/15, EEOC-CVG-2015-1 (EEOC Guidelines 2015) (https://perma.cc/DVP9-H9J4). She also cites a case in which a court held that the temporary nature of a high-risk pregnancy complication did not preclude a triable issue of fact as to whether the plaintiff was disabled under the ADA. Heatherly v. Portillo's Hot Dogs, Inc., 958 F. Supp. 2d 913, 920–921 (N.D. Ill. 2013).

Neither of the authorities Smith cites asserts that temporary conditions associated with a normal pregnancy can render a party disabled. Rather, they emphasize that abnormal, severe complications can render a party disabled even if they are temporary. See id. (characterizing the at-issue pregnancy as "high risk"); EEOC Guidelines (listing pregnancy-related impairments that can be disabilities, including "disorders of the uterus and cervix," "pregnancy related anemia," and "pelvic inflammation causing severe pain."). Neither Heatherly nor the EEOC Guidelines suggest that heightened health risks resulting from the normal course of pregnancy constitute an impairment that can render a party disabled under the ADA.

Because no facts in the record would allow a reasonable juror to infer that she had abnormal or severe complications associated with her pregnancy, the Court agrees with Michigan Bell that Smith cannot establish that she was disabled within the meaning of the ADA.

    ii.    **Adverse Employment Action**

Even if Smith were disabled under the ADA, the Court agrees with Michigan Bell that she cannot establish she suffered an adverse employment action. Because Smith voluntarily resigned, the adverse employment action element requires her to show that she was constructively discharged from her employment. Hurtt v. Int'l Servs., Inc., 627 F. App'x 414 (6th Cir. 2015).

8

Smith asserts that she was constructively discharged because of Michigan Bell's "lack of accommodation." Resp. at PageID.862. In making the constructive discharge claim, Smith emphasizes two primary grievances. First, she claims that she was issued a counseling covering dates for which she was approved to work from home. Id. at PageID.867. Second, Smith asserts that she was required to come into the office during her approved accommodation to receive the necessary equipment to work from home. Id. Smith claims that the combination of this discipline and lack of accommodation "caused her to resign." Id. at PageID.868. The Court agrees with Michigan Bell that neither of these incidents, either alone or in concert, meets the demanding standard of objective intolerability required for a constructive discharge.[6]

A constructive discharge claim requires an employee to show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Talley, 542 F.3d at 1107 (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)). The employee must show that her employer "intended to oust" her and "created an objectively intolerable work environment to deliberately force" her to resign. Tchankpa v. Ascena Retail Grp., Inc., 951 F.3d 805, 814 (6th Cir. 2020).

The Sixth Circuit has emphasized that "intolerability is a demanding standard." Id. Behaviors that can create an objectively intolerable workplace include "demotion, reduction in salary, badgering, harassment, humiliation, and sexual assault." Id. But "criticism and negative

---

[6] In addition to the counseling and delay in receiving work from home equipment, Smith describes a variety of other instances which she contends qualify as adverse actions in her interrogatory responses. Ex. C, to Smith's Interrog. Resp.at PageID.896–900 (Dkt. 35-3). Setting aside the issue that many of these instances do not relate to the 2021 pregnancy at issue in Smith's ADA disability discrimination claim, these allegations similarly would not allow a reasonable juror to conclude that Michigan Bell deliberately created an intolerable work environment with the intention of forcing Smith to resign.

feedback do not suffice, especially when contained to a few isolated incidents." Id.; see also Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002) (holding that "criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions.").

In the disability context, a constructive discharge is not established by intermittent lapses in accommodating a disability. Talley, 542 F.3d at 1109. By contrast, an employer's neglect of accommodations can constitute a constructive discharge "when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered." Id.

Here, Smith has not adequately explained why the July 2021 discipline she received was inappropriate in light of her accommodation, much less a constructive discharge. Nowhere in Smith's briefs does she assert that she was, contrary to Michigan Bell's assertions, working on the dates for which she was disciplined. Rather, she asserts that receiving "a discipline for 'missing' time during an approved accommodation would be more than sufficient to qualify as an adverse action." Resp. at PageID.867. Smith's argument misses the point that her approved pregnancy accommodations (working from home) did not encompass the behavior for which she was disciplined (an unexcused absence, meaning "she did not work at all."). Reply Br. at PageID.908; 6/29/21 AT&T MyCoach R. at PageID.667 (Dkt. 34-3).

Moreover, the July 2021 discipline was the first step in the discipline process. Smith received no other formal discipline in the nearly two years prior to her resignation. Peck Decl. at PageID.631. This isolated instance is not sufficient to create an objectively intolerable work environment. See Agnew, 286 F.3d 307, 310 (quoting Bielert v. Northern Ohio Properties, No. 87–4031, 1988 WL 125357, at *5 (6th Cir. 1988)) ("An employer does not constructively discharge

10

an employee simply by advising him that he must be productive in order to retain his new job."); Plautz v. Potter, 156 F. App'x 812, 818 (6th Cir. 2005) (stating that "the manner in which an employer criticizes an employee's job performance, such as attendance, is insufficient to establish constructive discharge.").

Second, Smith asserts that the difficulties she experienced in receiving the equipment required to work from home constituted a constructive discharge. In particular, Smith reports being forced to come into the office during her approved work from home accommodation to retrieve functional equipment. Resp. at PageID.867. This requirement, while no doubt inconvenient, does not rise to the level of objective intolerability. These difficulties can also be readily contrasted with the disability-related constructive discharge at issue in Talley, where an employer repeatedly denied a request for accommodations and "offered no reasonable alternative." Talley, 542 F.3d at 1109. Put simply, a delay in receiving work from home equipment is not evidence from which a reasonable juror could infer that Michigan Bell "intended to oust" Smith from her position. Tchankpa, 951 F.3d at 805.

Finally, the length of time between Smith's 2021 pregnancy accommodations and her voluntary resignation in 2023 is inconsistent with objectively intolerable working conditions. See Brelsford v. U.S. Foodservice, Inc., No. 06-13628, 2007 WL 2902873, at *4 (E.D. Mich. Oct. 2, 2007) (explaining that the plaintiff continuing to work for two months after an alleged adverse employment action was "inconsistent with intolerable working conditions.").

Even viewing the facts in the light most favorable to Smith, a reasonable juror could not conclude that Michigan Bell deliberately created an intolerable work environment with the intention of forcing Smith to resign. Thus, Smith has failed to establish that she was subjected to a constructive discharge.

11

Because Smith has not offered sufficient evidence for a reasonable jury to infer that she was disabled or that she suffered an adverse employment action, Smith has failed to make a prima facie showing of disability discrimination. The Court thus rejects Smith's discrimination claim under the ADA as a matter of law.

### B. Smith's Failure to Accommodate Claim Under the ADA

While she does not raise a freestanding claim of failure to accommodate in her amended complaint, Smith alleges that Michigan Bell failed to accommodate the restrictions associated with her pregnancy. Amend. Compl. at PageID.29. The ADA defines one form of disability discrimination as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

In the Sixth Circuit, ADA failure to accommodate claims are established through direct evidence. Fisher v. Nissan N. Am., Inc., 951 F.3d 409, 417 (6th Cir. 2020). Under this framework, the plaintiff "bears the burden of establishing (1) that [s]he is disabled, and (2) that [s]he is otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." Id. at 419 (quoting Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007)) (punctuation modified).

Because Smith has not offered sufficient evidence for a reasonable jury to infer that she was disabled, Smith has failed to make a prima facie showing of Michigan Bell's failure to accommodate. The Court thus rejects Smith's failure to accommodate claim under the ADA as a matter of law.

12

### C. Smith's Retaliation Claim under the ADA

The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful" by the Act. 42 U.S.C. § 12203(a). It also makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected" by the Act. 42 U.S.C. § 12203(b).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) [she] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)).

Because Smith has not offered sufficient evidence for a reasonable jury to infer that she experienced an adverse employment action, Smith has failed to make a prima facie showing of retaliation. The Court thus rejects Smith's retaliation claim under the ADA as a matter of law.

### D. Smith's Claims under the PWDCRA and ELCRA

Smith also brings disability discrimination (Count II) and retaliation claims (Count IV) under PWDCRA, and a sex discrimination claim under the ELCRA (Count V). Because the Court grants Michigan Bell's summary judgment motion as to the federal claims, the Court will use its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(2); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1976) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

## III. CONCLUSION

For the above reasons, Defendant's motion for summary judgment (Dkt. 34) is granted as to the federal claims. The federal claims are dismissed with prejudice. Smith's state- law claims are dismissed without prejudice.

**SO ORDERED.**

Dated: September 26, 2025　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 26, 2025.

　　　　　　　　　　　　　　　　　　　　　s/Joseph Heacox
　　　　　　　　　　　　　　　　　　　　　JOSEPH HEACOX
　　　　　　　　　　　　　　　　　　　　　Case Manager